[Crim. No. 2562. First Dist., Div. One. Apr. 29, 1949.]

THE PEOPLE, Respondent, v. JACK HOWARD GEORGE et al., Appellants.

George W. Davis for Appellants.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

BRAY, J.—All defendants were convicted in the superior court of two crimes: (1) rape, and (2) conspiracy to commit rape. At judgment, the court ordered the sentences for the two offenses to run concurrently. From the judgment after jury verdicts, all defendants appealed. Motions for new trial and probation were denied.

Three contentions are made: (1) the trial court erred in denying defendants' motions to dismiss the indictments for lack of a speedy trial; (2) the testimony of the prosecutrix is inherently incredible, and therefore there is insufficient evidence to support the verdicts; and (3) prejudicial misconduct of the district attorney.

### 1. WERE DEFENDANTS DENIED A SPEEDY TRIAL?

In considering this question the record is important. It follows:

April 29: Indictment returned.

May 3: Arraignment. Defendants moved for reduction of bail. Cause continued to May 10.

May 10: Motion denied. Cause continued, to plead.

May 17: Defendants demurred to indictment. Demurrer overruled. Pleas of not guilty. Trial set for June 15.

May 20: Defendants moved to have complaining witness undergo physical examination.

May 21: Hearing on motion continued to May 26 with consent of respective counsel.

May 26: Motion taken under submission. Cause continued to May 28.

May 28: Cause continued to June 3 with consent of respective counsel.

June 3: Cause continued to June 4 with consent of respective counsel.

June 4: Cause continued to June 8 with consent of respective counsel.

June 8: Cause continued to June 10 with consent of respective counsel.

June 10: Cause continued to June 15 with consent of respective counsel, for hearing on motion for physical examination of complaining witness.

June 15: Motion requesting examination taken from the calendar. Cause continued to July 7 for trial. Record shows neither consent nor objection of counsel.

*June 29: Expiration of 60-day period.*

July 7: Cause continued to July 12 with consent of respective counsel.

July 12: Defendants moved to dismiss indictment because of lack of speedy trial. Cause continued to July 13 for hearing of motion. No objection made.

July 13: Motion to dismiss denied. ''Thereupon the court restated the trial date that has been allotted to this action, namely, July 26th, 1948.''

July 26: Trial began. Another motion to dismiss denied.

It is apparent that defendants either consented to, or acquiesced in, all continuances during the 60-day period and thereafter until July 13. While the record does not disclose any consent to the continuance of May 26, it shows no objection being made, and shows also that thereafter defendants consented to further continuances, and thereby waived any right to object to the preceding continuance to which they did not formally consent. The same is true of the continuance on June 15. On July 12, although defendants consented to the continuance of trial from July 7 to July 12 (and had consented, or not objected, to the other continuances, several of which were in connection with their motion for a physical examination, which was dropped from the calendar on June 15 because of the fact that the prosecutrix had voluntarily submitted to an examination by a doctor appointed by the court) they made a motion to dismiss the indictment on the ground that they had not been brought to trial within the 60-day period. Certainly they were not entitled to a dismissal at that time. To dismiss an indictment against defendants

who had consented to the setting of their trial beyond the 60-day period, because of the very act to which they had consented, would be a miscarriage of justice.

". . . if the consent of defendant to the postponements from time to time was not equivalent to an application by him for postponement, it was sufficient excuse for the delay." (*People* v. *Benc,* 130 Cal. 159, 162 [62 P. 404].) "The consent of a defendant that his trial on a criminal charge be set for a date beyond the sixty-day limit prescribed by subdivision 2 of section 1382, *supra,* is equivalent to a postponement upon his application within the meaning of that section, and is sufficient excuse for the delay. [Citing cases.] Consent is presumed when the defendant fails to object at the time the cause is set for trial beyond such period. [Citing cases.]" (*Ray* v. *Superior Court,* 208 Cal. 357, 358 [281 P. 391].) "The record shows no objection by defendant at the time the continuances were ordered, and his consent is therefore presumed." (*People* v. *Howe,* 1 Cal.App.2d 518 [36 P.2d 820].)

On the hearing of the motion to dismiss, the assistant district attorney filed an affidavit (defendants filed no counter-affidavit nor made any counter showing to the matters set forth therein) which, after giving the history of the continuances in the case and the fact that defendants had consented to them, stated that before June 28, the attention of defense counsel was called to the fact that a murder trial which had been set for trial on June 28 was not to be tried as the defendant had pleaded guilty. The assistant district attorney requested defense counsel to agree to the advancement of the trial of this case from July 7 to a day during the week of June 28, which the latter declined to do. Further, there had been negotiations for some time between respective counsel concerning "a possible plea to be entered" by the defendants, and it was not until July 9 that those negotiations were finally concluded by the defendants declining to enter a plea different from that already entered. Also, during all the time this case was on the calendar of department 12 (the department to which it had originally been assigned), that department's calendar was congested, there being at all times some 40 or 50 cases awaiting trial, and that department, as well as the other criminal departments of the court, had been engaged constantly in trials of criminal cases. It appears also from the transcript of the proceedings on July 12 and 13, that the court was then engaged in a murder case to be followed on July 19 (the date requested by defendants for the trial of this

case) by a burglary case, and that the first open date the court had was July 26. The judge asked the judge of department 11 to take the trial of the case, but he would not do so because of a criminal case going to trial there. Owing to the absence of one of the judges of the criminal department, there were only two judges left for the ensuing nine or ten days. That the defendants made no objection to the date set for the trial appears from the following excerpt from the transcript, showing how the proceedings on July 13 ended: "THE COURT: The motion to set aside will be denied. What date, gentlemen? MR. LAWLESS [for the prosecution]: July 26th? THE COURT: July 26th for trial. MR. DUNN [for the defense]: In this department, Your Honor? THE COURT: Yes."

Defendants contend that the delay of 14 days from the date upon which the record last shows a formal consent, and 28 days after the expiration of the 60-day period, constitutes a denial of a "speedy trial," under the constitutional provision and section 1382 of the Penal Code.

Article I, section 13, of the Constitution provides in part: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial; . . ." Section 1382 of the Penal Code provides in part: "The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases: . . . 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment, or filing of the information. . . ." It has been held that "What constitutes a speedy trial must be determined in the light of all the circumstances. (*People* v. *Brock,* 87 Cal.App. 601 [262 P. 369, 263 P. 544]; *In re Alpine, supra* [203 Cal. 731 (265 P. 947, 58 A.L.R. 1500)]; *People* v. *Molinari, supra* [23 Cal.App.2d Supp. 761 (67 P.2d 767)].)" (*People* v. *Godlewski,* 22 Cal.2d 677, 682 [140 P.2d 381].)

The minutes of July 13 do not state the reason the trial was continued. It is set forth that "the court *restated* the trial date that has been allotted to this action, namely, July 26th, 1948." (Emphasis added.) This referred to the date set by the court on July 12.

The defendants made no objection to the continuance from July 12 to July 13 or to the date set for trial, nor did they demand that they be tried July 13. Although they had moved for a dismissal for failure to bring them to trial in 60 days, when their motion was denied, if they objected to the fact

that the court was setting their trial for 13 days away, they should have said so. Their failure then to object presumes consent. (*People* v. *Rongo,* 169 Cal. 71 [145 P. 1017]; *In re Scott,* 81 Cal.App. 577 [254 P. 596]; *Ex parte Apakean,* 63 Cal.App. 481 [218 P. 768].) The motion to dismiss, made the day of the actual trial, could not act as a substitute for the failure of the defendants on July 13 to object to the setting of the trial for July 26.

The cases cited by defendants are not opposed to this rule. In *People* v. *Morino,* 85 Cal. 515 [24 P. 892], the defendant was arraigned on August 12, the fifth day after the information was filed. Not having been brought to trial and he having "never made any application for, nor was there any postponement of, the action in his behalf or on his application" he made a motion for dismissal on the following 19th of March, more than eight months after the filing of the information. In *In re Begerow,* 133 Cal. 349 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513], defendant had been tried for murder three times, the jury failing to agree each time. After 60 days elapsed from the last trial, defendant moved to dismiss. The trial court denied his motion. On the 85th day, still not having been brought to trial, he petitioned the Supreme Court for a writ of habeas corpus, which was granted. No contention was made that he had consented to or acquiesced in the delay. In *Harris* v. *Municipal Court,* 209 Cal. 55 [285 P. 699], the court granted a writ of mandamus to dismiss a misdemeanor proceeding where the defendant was not brought to trial within 18 months of the filing of the complaint. Again, there was no contention that the defendant had in any way acquiesced in or agreed to the delay. *People* v. *Angelopoulos,* 30 Cal.App.2d 538 [86 P.2d 873], was a case in which the defendants were not brought to trial within 60 days after a mistrial. Two of the defendants consented to a continuance of the trial beyond the 60-day period thereafter. One of the defendants objected. It was held that as to him the case should have been dismissed. In *Rice* v. *Superior Court,* 40 Cal.App.2d 391 [104 P.2d 874], a writ of mandamus was issued to compel the dismissal of an information where the defendant had not been brought to trial for 64 days after the information was filed. No contention was made that the defendant had consented to or acquiesced in any way in the delay. In *People* v. *Fegelman,* 66 Cal.App.2d 950 [153 P.2d 436], the court gave an extremely narrow construction to the term "speedy trial." However, it is factually much

different from the case at bar. There the case was originally set for trial for November 1, which was the 60th day after the filing of the information. On that day the deputy district attorney, representing the People, requested that the case be continued for one day in order that he might obtain evidence to lay a foundation for the admission of the preliminary testimony of an absent witness. Defendant very strenuously objected, both on the grounds that the continuance of one day would bring the trial beyond the 60-day period, and that no showing had been made why, with ordinary diligence, the district attorney could not that day produce evidence as to the absence of the police officer whose testimony was to be read. Again, the reporter's transcript quoted in the opinion shows that the trial court was quite arbitrary in first continuing the case until the afternoon because "I have some matters in chambers" (p. 952), and then continuing the case to the next day, saying he would "possibly" rule on the matter the next morning. These facts in nowise compare with those in our case. *Dearth* v. *Superior Court,* 40 Cal.App.2d 56 [104 P.2d 376], likewise can give no real comfort to defendants. There the case was set for trial in department 44 for March 27, approximately the 35th day after the information was filed. On that day, defendant appeared ready for trial, but the judge, on his own motion, continued the case to April 22, the 60th day. Again defendant appeared, ready for trial, but the case was continued until the next day. Again defendant appeared, ready for trial. However, a civil case had been set for trial in department 44 that day. The judge started the trial of the civil case and continued the criminal case to April 26. On April 24 defendant moved for a dismissal on the ground that he had not been brought to trial within 60 days. The judge denied the motion, stating that he would have been ready to try defendant's case on the 23d, if the presiding judge had not assigned the civil case to his department. On April 26, defendant again moved for a dismissal, which was denied, and the case was transferred to department 41, the master calendar department. Again, there, defendant moved to dismiss, the motion was denied, and the case set for trial for May 13, the 81st day. On May 9, defendant applied to this court for a writ of mandamus to compel the dismissal of the information, which was granted. Obviously, the facts in that case are entirely different from those in our case. While the defendant there, by failure to

object to the continuances prior to April 24, was deemed to have consented to such continuances, the court pointed out that over his objection, the court gave a civil case precedence over a criminal case, when section 1050 of the Penal Code requires that criminal cases should have the precedence.

In defendants' opening brief appears the statement that defendants "strenuously objected" on July 13 to the setting of the trial for the 26th. The record, including the transcript of the proceedings that day, shows no such objection having been made.

The question of whether defendant has been given a "speedy trial" must be viewed from a common sense viewpoint. It is a matter of common knowledge that criminal courts, particularly in the larger counties, are extremely busy. While it is important that the constitutional rights of a person to a "speedy trial" be fully protected, at the same time the crowded condition of our court calendars must likewise be regarded. Here the defendants, by dilatory pleas and their own acts, waived the right to a trial within the 60-day period. It is not reasonable to hold, under the circumstances here, that a delay of, at most, 14 days from the date to which they last formally consented that the trial be continued, deprived them of a "speedy trial." We do not intend to hold that where delay in trial is consented to by a defendant, such consent automatically gives the court another 60-day period in which to bring the defendant to trial. But the right to a "speedy trial" does not mean that a defendant has a right to be tried on *any certain day*. Here, as soon as the defendants showed a desire to have their case tried, the case was tried within 14 days.

That a defendant who has consented to a delay beyond the 60-day period is not entitled to an immediate trial on the day to which he has last consented is shown by the decision in *People* v. *Santos,* 134 Cal.App. 736 [26 P.2d 522]. There the indictment was found on January 19. Defendant was arraigned on February 24, and the trial set for March 6. Subsequently, by the consent of respective counsel, the trial was continued to March 20. On that date, again by consent of respective counsel, it was "continued to be set" to March 25. This date was beyond the 60-day period. On March 25, defendant's counsel failed to appear, and the setting of the trial was continued to March 27. Again counsel failed to appear, and the trial was set for April 27. On that date defendant moved for a dismissal on the ground that he had

not been brought to trial in 60 days. His motion was denied, and the trial set for May 11, when the trial began. It was exactly 14 days from the date of the denial of his motion to the date of trial. After holding that defendant's consent to continuances and the failure of his counsel to appear was equivalent to a postponement upon defendant's application, the court stated: *"It may be noted that the cause was tried within a reasonable time thereafter . . ."* (P. 744; emphasis added.) Under all of the circumstances of our case, the defendants were not denied a "speedy trial," and the court properly denied the motions to dismiss.

## 2. Testimony of Prosecutrix

 Defendants' contention that the testimony of the prosecuting witness is inherently improbable is limited to the question of penetration. They contend that in view of the testimony of the medical doctors, her statement that there was penetration is incredible, and therefore, any proof of rape falls. As the defendants make no contention that the evidence is not sufficient to support the verdicts, if the question of penetration, which applies only to the rape charge, is proved, it is not necessary to go into all the sordid details of the case, except as to the facts concerning that issue.

The testimony of the prosecutrix as to the events of the evening and night in question and the fact that she was forcibly and against her will taken in defendant George's car by all defendants to a secluded spot is well corroborated. What happened there is disputed, the defendants denying that they raped or attempted to rape her. Prosecutrix testified that all three defendants came to the back seat of the car, her girdle and panties were ripped off, and two of them held her arms and legs, while each in turn managed to place his penis in her "privates." It is this statement of prosecutrix that defendants characterize as inherently incredible. Defendants finally took the prosecutrix home and she immediately notified the police. The latter took her to the Central Emergency Hospital for an examination. The examination disclosed bruises about her face and body, upon her hands, arms and upper thighs. An examination of the pelvic region showed a slight tear of the hymen, which admitted a swab about a half an inch in size readily, with some slight tenderness. The doctor thought that this tear was an old one, and he found "no abnormality of the external genitalia, no swell-

ing or discharging, and separating the entrance to the vagina there was no laceration noticed." He found no sperm or gonorrhea. Later that day she was examined by another doctor who found one of the bones of the palm of her hand broken. Defendants contend that the absence of sperm, the slight amount of tenderness, and the testimony of the doctor that the tear in the hymen was an old one, and in any event, comparatively slight, make the prosecutrix's statement that there was any penetration incredible. This does not necessarily follow. According to the prosecutrix's testimony, she was struggling at all times and the defendants were having considerable difficulty in having intercourse with her—"one would say it was his turn, the other wasn't man enough, and he wasn't getting anywhere, and they would try to pull one another off, or they would say, how was he doing, and there was some statement made that I was tight, that they couldn't get what they wanted." Dr. Morse, who examined prosecutrix June 11 (the attacks occurred the morning of April 19) testified that the condition of the hymen indicated that the rupture had occurred not more than three months past at the most. It was the doctor's opinion that because of the smallness of prosecutrix's vagina the average male organ could not gain complete entrance. This fact corroborates the testimony of prosecutrix to the effect that each defendant did not stay on top of her long. He was dragged off by one of the others, who claimed it was his turn—"they were each there and saying it was their chance next and each one of them had stated they were having the same trouble, that I was tight and they couldn't get anywhere."

To constitute rape it is not required that there be complete penetration. "Any sexual penetration, *however slight*, is sufficient to complete the crime." Pen. Code, § 263; *People* v. *Lindley*, 26 Cal.2d 780 [161 P.2d 227]; emphasis added.) Nor is any rupture of the hymen necessary to constitute rape. The medical testimony does not make the statement of the prosecutrix that she was entered, improbable. In fact, the smallness of her vagina would account for the difficulty the defendants were having, but would not necessitate the conclusion that there was not some penetration. Prosecutrix testified (and the jury believed her) that the defendants had inserted their penises in her vagina. The value of her testimony was for the jury to determine. In *People* v. *Stangler*, 18 Cal.2d 688 [117 P.2d 321], where the defendant was accused of raping a 10-year-old child, the same

contention was made as here. That contention is well answered by the following quotation from that case (p. 691) : ''The defendant contends first that the testimony of the prosecutrix was so inherently improbable, incredible and incongruous as ·to require a reversal of the order denying his motion for a new trial. He relies on the case óf *People* v. *Ogden,* 41 Cal. App.2d 447, 457 [107 P.2d 50], and the following language quoted therefrom: 'Before we are authorized to say that the testimony of the prosecutrix herein bears upon its face the brand of inherent improbability and is unbelievable *per se,* we must be warranted in concluding that what she testified to would seem impossible to have taken place under the circumstances described by her.' He contends that the prosecutrix's description of what took place was a physical impossibility, rendering her testimony incredible as a matter of law. However, the jury and the trial court had the defendant and the prosecutrix before them. Any doubt as to whether the acts described were physically impossible was resolved against the defendant by the jury and by the trial court on the motion for a new trial. It was also said in *People* v. *Ogden, supra,* citing *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], and *People* v. *Gidney,* 10 Cal.2d 138 [73 P.2d 1186], that an appellate tribunal cannot disturb the findings of the triers of fact unless it be made clearly to appear that upon no hypothesis is there sufficient substantial evidence, circumstantial or otherwise, to support the conclusion reached in the lower court.''

On cross-examination prosecutrix was unable to state in detail what each of the defendants was doing at a particular time, that is, who was holding her hands and who was holding her legs and just which defendant was in the car and who was outside of it. In view of her attempted escape from the car, the forceful placing her back in the car, the attack by three men, the lateness of the hour (4:30 a. m.) and all the circumstances, it is not surprising that there was some confusion in her testimony, but such confusion does not make her testimony inherently improbable. The effect of it was for the jury, as was the lack of sperm found by the examining doctor.

### 3. ALLEGED MISCONDUCT

Defendants contend that the assistant district attorney was guilty of prejudicial misconduct in stating in his closing argument: ''Now, Members of the Jury, Mr. Dunn is right in one respect, that this is a serious case. It is serious. It is very serious. It is a thing in San Francisco that has to be

stopped—some way, somehow. You cannot, you cannot allow this to go on and the only way that we law enforcement officers, who as a branch of the judicial system have to put a stop to this outrage to woman—there is only one way you can do it, and that is to punish those that do it and by that—and by that, Members of the Jury, put a deterrent, put a brake on others that may have the same idea. You can see, you can understand, Members of the Jury, that if a thing like this is allowed to go unpunished and allowed to run wild what protection would any woman, young or old, married or unmarried—what protection would you have? Would you want a situation where women at any time, either day or night, could be ravished at will, at the mere whim of any man or any gang of hoodlums? Any gangsters who show their bravery in numbers——'' At this point defense counsel assigned the statement as misconduct and asked the court to instruct the jury to disregard it. The court stated: ''I don't think this presentation is inflammatory. It appears to be within the rights of the District Attorney to argue the case fully and draw such conclusions as are justified by the evidence.'' Defendants have cited no case holding that statements of this nature constitute prejudicial misconduct. In *People* v. *Burnette,* 39 Cal.App.2d 215 [102 P.2d 799], cited in purported support of their contention, the court held that statements much worse than these, for example, referring to the defendants as ''yellow rats,'' although overstepping the bounds of propriety, were not of ''such a flagrant character as to require a reversal.'' (P. 230.) Under the circumstances of this case, including the fact that the evidence of the forceful placing of prosecutrix in the car was corroborated, the fact that the defendant George when arrested admitted his guilt and named the other two defendants, the testimony of defendant George, the only one of the defendants to take the stand, which corroborated prosecutrix in most details (except as to the rape), we cannot say that the remarks of the district attorney constituted wilful misconduct.

The judgments are affirmed.

Peters, P. J., and Ward, J., concurred.