[S. F. No. 22253.   In Bank.   July 6, 1966.]

PAUL DEAN BARKER et al., Petitioners, v. THE MUNICI-
PAL COURT OF THE SALINAS JUDICIAL DIS-
TRICT OF MONTEREY COUNTY, Respondent; THE
PEOPLE, Real Party in Interest.

Grupp & Grupp and Morris M. Grupp for Petitioners.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Respondent and for Real Party in Interest.

PEEK, J.—Petitioners seek a writ of mandate to compel the respondent court to dismiss a complaint charging them with attempted murder, or, in the alternative, a writ of prohibition directing respondent to cease proceeding with the prosecution.

On December 26, 1947, a complaint charging petitioners with attempted murder was filed in the Justice Court of Alisal Township, Monterey County. In February 1948, they were apprehended in Texas where they were charged with and convicted of certain federal offenses. They were not returned to stand trial in this state. In March 1948 they began serving their sentences in the federal penitentiary at Leavenworth, Kansas. In May 1948 the then District Attorney of Monterey

County requested the United States Attorney General to return petitioners to Monterey County for trial. The Attorney General replied that he would honor writs designed to bring petitioners to California for trial, but suggested that the district attorney might prefer to delay action as petitioners were soon to be transferred to California for confinement in the federal penitentiary at Alcatraz.

Thereafter in September 1948 petitioners were transferred to Alcatraz. In July 1948 and at least on 10 occasions after their transfer, petitioners and others on their behalf wrote to the district attorney. These letters variously requested that the district attorney act to remove his detainer warrants filed with the federal authorities, urged that he reveal his intentions as to petitioners' trial, and demanded that he bring them to trial or move to dismiss the charges. On at least seven occasions previous to the bringing of the instant proceeding, motions and petitions seeking a speedy trial or dismissal of the 1947 complaint were filed in local courts. Three such actions were filed while petitioners were at Alcatraz, prior to their return to Leavenworth Prison in September 1956. All the motions and petitions were denied.

Throughout the period during which petitioners were incarcerated, the federal authorities indicated their willingness to cooperate in producing petitioners for trial in California. In September 1950 the then warden at Alcatraz Prison wrote to the district attorney to inquire as to whether he intended to bring petitioners to trial. On November 3, the district attorney wrote that he did intend to prosecute, that he would execute the necessary documents in the immediate future, and requested advice as to the procedures to be followed. He was informed that his request had been forwarded to the Director of Prisons in Washington, D.C., and in November 1952 the Bureau of Prisons supplied the district attorney with the requested information.

Again, on July 30, 1953, another official at Alcatraz Prison inquired as to the district attorney's intentions in regard to petitioners. He replied, recommending that they not be transferred from Alcatraz. On March 11, 1955, the United States Director of Prisons telegraphed the district attorney to inform him that petitioners might be removed from Alcatraz, and asked as to present intentions concerning a trial. Five days later the district attorney answered that he had no intention of withdrawing the detainer warrants against petitioners, but indicated that he would not proceed to trial. Finally, in

February 1958, the warden of the United States Penitentiary at Leavenworth was informed that the United States Attorney General would make petitioner Paul Barker (and presumably his brother) available to face the California charges "if and when the California authorities desire to have the case pending against him disposed of." A copy of this letter has been on file at the Monterey District Attorney's Office since March 10, 1958.

Petitioners' requests made directly to the district attorney were generally ignored, as were several letters from their attorney. On July 26, 1954, the district attorney for the first time replied to petitioners' attorney. This was in response to his fifth letter requesting that petitioners be granted a speedy trial. "I have no intention," the district attorney wrote, "of bringing the Barkers to trial at the present time. . . . [I]t is my intention to let the matter remain in status quo as long as it is possible. . . . When the Barkers come within the jurisdiction of the State of California and the statute of limitations begins to run out, some effort undoubtedly will be made to bring them to trial. . . . As far as I am concerned . . . [they] can sit and rot in prison for the rest of their lives."

Petitioners had been in federal prisons for almost 18 years, and had repeatedly and unsuccessfully sought to have the local charges pending since 1947 adjudicated, when, on October 4, 1965, the District Attorney of Monterey County filed the instant amended complaint in respondent court. The complaint again charges petitioners with attempted murder, and asserts in addition that "from on or about March 19, 1948, to date . . . the said [defendants] . . . were outside of the State of California, in that they were under the exclusive control and custody of the United States Department of Justice in the United States Penitentiary at Leavenworth, Kansas . . . and . . . at Alcatraz, California. . . ." Petitioners moved for an order dismissing the complaint on the ground that their constitutional right to a speedy trial had been denied. The instant petition was filed promptly after the motion was denied.

The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." Article I, section 13, of the California Constitution states that "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial. . . ." (See also Pen. Code, § 686.) The California provision for a

speedy trial " 'reflects the letter and spirit of' the Sixth Amendment to the United States Constitution. . . .'' (*People* v. *Wilson* (1963) 60 Cal.2d 139, 144 [32 Cal.Rptr. 44, 383 P.2d 452].)

The right to a speedy trial is a ''fundamental right granted to the accused and . . . the policy of the law since the time of the promulgation of Magna Charta and the Habeas Corpus Act.'' (*Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60-61 [285 P. 699].) The function of this vital constitutional provision is ''to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers.'' (*In re Begerow* (1901) 133 Cal. 349, 354-355 [65 P. 828, 85 Am.St.Rep. 178, 56 L.R.A. 513] ; *People* v. *Wilson, supra,* 60 Cal.2d 139, 148.)

The Legislature has enacted specific provisions declaratory of the constitutional right to a speedy trial. (Pen. Code, §§ 1381-1389.7.) By section 1381 of the Penal Code, prisoners incarcerated in California institutions are entitled to a trial of outstanding criminal complaints within 90 days of a written demand upon the district attorney of the county in which the charge is pending. If the prisoner is not brought to trial within the time provided, and he has not consented to a further delay, ''the court in which such action is pending must, on motion or suggestion of the district attorney, or of the defendant or . . . his counsel . . . or on its own motion, dismiss such charge.'' In 1963, the Legislature provided similar formal procedures for those imprisoned in sister states signatory to the interstate agreement on detainers (Pen. Code, §§ 1389-1389.7), and for those incarcerated in federal prisons (Pen. Code, § 1381.5).

Section 1381.5 of the Penal Code now provides: ''Whenever a defendant has been convicted of a crime and has entered upon a term of imprisonment therefor in a federal correctional institution, and at the time of entry upon such term . . . or at any time during such term . . . there is pending in any court of this State any indictment, information, or complaint charging such defendant with the commission of a crime, it is mandatory that the district attorney of the county in which such charge is pending, upon receiving from such defendant a request that he be brought to trial on such charge, promptly inquire of the warden or other head of the federal correctional institution in which such defendant is confined whether and when such defendant can be released for trial. If an assent . . . for release of the defendant for trial is received by the

district attorney he shall bring him to trial within 90 days after receipt of such assent, unless the federal authorities specify a date of release after 90 days. . . . If an action is not brought to trial as provided by this section, the court in which the charge is pending shall, on motion or suggestion of the district attorney, or representative of the United States, or the defendant or his counsel, dismiss the charge.''

Had section 1381.5 been in effect at any time during which petitioners made a demand to be brought to trial on the 1947 complaint, they would be entitled to dismissal of the charges under its provisions. The fact that the section was not in effect during the greater part of petitioners' federal incarceration and at none of the times when they made requests for trial does not mean, however, that they are denied a remedy.

While the courts have regularly adopted and enforced legislative interpretation of the constitutional provision for speedy trial, the constitutional provision ''is self-executing.'' (*Harris* v. *Municipal Court, supra*, 209 Cal. 55, 60.) ''[I]t is not necessary to have specific legislation to carry into effect section 13 of article I. . . .'' (*Rost* v. *Municipal Court* (1960) 184 Cal.App.2d 507, 511 [7 Cal.Rptr. 869, 86 A.L.R.2d 974].) The provisions of the Penal Code are merely '' 'supplementary to and a construction of' the Constitution.'' (*People* v. *Wilson, supra*, 60 Cal.2d 139, 145; *People* v. *Godlewski*, 22 Cal.2d 677, 682 [140 P.2d 381].) Thus, it is unnecessary that petitioners, in asserting their constitutional rights to a speedy trial, rely on specific statutory provisions applicable to prisoners.

''[W]hat is a speedy trial in the constitutional sense . . . depends on the circumstances of each case bearing on . . . good cause'' for the delay in bringing a defendant to trial. (*In re Lopez* (1952) 39 Cal.2d 118, 120 [245 P.2d 1]; see also *Pollard* v. *United States* (1957) 352 U.S. 354, 361 [77 S.Ct. 481, 1 L.Ed.2d 393].) When there has been an extended delay in bringing a defendant to trial, ''it is not necessary that the party accused affirmatively show prejudice. . . . It is enough for the defendant to show that the prosecution has been unreasonably delayed. It will not be presumed that good cause for the delay in fact existed. If there was any good cause it was for the prosecution to show it.'' (*Harris* v. *Municipal Court, supra*, 209 Cal. 55, 64; see also *In re Begerow, supra*, 133 Cal. 349, 354.) ''The cases hold that prejudice is presumed, or necessarily follows, from long delay; *a fortiori* it follows when the defendant is imprisoned

over the years before trial.'' (*Petition of Provoo* (D.Md. 1955) 17 F.R.D. 183, 203, affd. 350 U.S. 857 [76 S.Ct. 101, 100 L.Ed. 761]; see *United States* v. *Simmons* (2d Cir. 1964) 338 F.2d 804, 808, cert. den., 380 U.S. 983 [85 S.Ct. 1352, 14 L.Ed.2d 276]; *United States* v. *Chase* (N.D.Ill. 1955) 135. F.Supp. 230, 232-233.) ■ ''The right of a speedy trial is granted by the Constitution to every accused. A convict is not excepted. He is not only amenable to the law but is under its protection as well.'' (*State* v. *Keefe* (1908) 17 Wyo. 227, 257 [98 P. 122, 131, 22 L.R.A. N.S. 896].)

■ The guarantee of a speedy trial ''serves a three-fold purpose. It protects the accused . . . against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and . . . it prevents him from being 'exposed to the hazard of a trial, after so great a lapse of time' that 'the means of proving his innocence may not be within his reach'—as, for instance, by the loss of witnesses or the dulling of memory.'' (*People* v. *Prosser* (1955) 309 N.Y. 353, 356 [130 N.E.2d 891, 893]; *State* v. *Keefe, supra*, 17 Wyo. 227, 257-258.)

■ The foregoing purposes are equally served with respect to one already imprisoned for another crime. Even the purpose of preventing undue imprisonment is of some concern to a California prisoner, because if he is promptly convicted of an additional offense he may be sentenced to serve a term of imprisonment concurrently with the term already imposed (Pen. Code, § 669); if a defendant is brought to trial only after his sentence on another charge has been completed, the possibility of concurrent sentences is denied him. The purpose and policy of avoiding the obvious prejudice which follows when required to defend against criminal charges long after commission of the alleged offenses are especially significant. In a case similar in its facts to those involved in the instant petition, the court remarked: ''The thought of ordering [defendant] to trial on this charge after a lapse of twenty years shocks the imagination and the conscience. . . . [I]t can almost be judicially noticed that the passage of that length of time will have made some [witnesses] inaccessible. . . . [C]ertainly their memories of those long past events are clouded. . . . [T]hey would be recalling something as in a dream, a kind of phantasmagoria, rather than an independent recollection. . . . Witnesses, however honest, could not respond with any accuracy to cross-examination, and another important right would thus be lost to petitioner.'' (*United*

*States* v. *Chase, supra,* 135 F.Supp. 230, 233; see also *Taylor* v. *United States* (D.C. Cir. 1956) 238 F.2d 259, 260-261; *State* ex rel. *Fredenberg* v. *Byrne,* 20 Wis.2d 504, 511 [123 N.W.2d 305, 309].)

There appears to be no sound reason for the distinction sometimes drawn between an accused serving a sentence outside a jurisdiction and one imprisoned within the jurisdiction. Both are equally entitled to a speedy trial. "The rationale of the early cases holding [that] a federal prisoner . . . could not be heard to complain was based on the reasoning the state as a matter of right could not insist the prisoner be returned and [that] the delay was the prisoner's own fault for having committed the crime for which he was imprisoned. However, the more-recent decisions . . . reason that once a state commences a criminal prosecution it has a *duty* to follow through and complete it, and the fact the defendant is incarcerated in a federal prison is not necessarily sufficient justification to make the delay reasonable. . . . '*The constitutional guaranty . . . contemplates that the means that are available to meet its requirements shall be utilized.*' . . . Although the imprisonment of the petitioner at [the federal prison] is his own fault, that in itself does not excuse the state's long delay in bringing him to trial *in the absence of a showing that the state was unable to obtain his return for trial* . . . Both . . . counties [in which the charges were pending] knew the defendant was imprisoned . . . and they could have initiated proceedings to return him for trial." (*State* ex rel. *Fredenberg* v. *Byrne, supra,* 20 Wis.2d 504, 509-510, 512 (italics added); see *Commonwealth* v. *McGrath* (Mass. 1965) 205 N.E.2d 710, 713-714; *People* v. *Bryarly* (1961) 23 Ill.2d 313, 318-319 [178 N.E.2d 326, 329]; *Taylor* v. *United States, supra,* 238 F.2d 259, 261; but see *In re Yager's Petition* (E.D.Ky. 1956) 138 F.Supp. 717, 718; *State* v. *Larkin* (1959) 256 Minn. 314, 315-316 [98 N.W.2d 70, 71].)

Our Legislature has heretofore provided that "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the *duty* of all courts and judicial officers and *of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice.*" (Pen. Code, § 1050, italics added.) This court has held that "the time within which criminal cases should be disposed of has been and is a matter of great public concern, and the *duty* is

imposed upon courts, judicial officers and public prosecutors, *to expedite the disposition thereof.*" (Italics added.) *Harris* v. *Municipal Court, supra,* 209 Cal. 55, 61; see *Matter of Ford* (1911) 160 Cal. 334 [116 P. 757, Ann.Cas. 1912 D 1267, 35 L.R.A. N.S. 882]; *People* v. *Morino* (1890) 85 Cal. 515 [24 P. 892]; *In re Bishop* (1962) 201 Cal.App.2d 604, 610-611 [20 Cal.Rptr. 186].)

The facts of the instant petition reveal no valid reason for the delay of almost 18 years in bringing petitioners to trial. The federal authorities did not refuse to allow petitioners to be brought to trial in California (see *People* v. *South* (1932) 122 Cal.App. 505, 508-509 [10 P.2d 109]); on the contrary, they indicated every willingness to assist and at times even appeared to press the California authorities toward that end. The fact that petitioners were transferred to Alcatraz and remained there for some eight years facilitated the People's task. Although the district attorney indicated some ignorance of the procedures to be invoked to obtain custody of petitioners, he had a duty to ascertain such information and in fact did receive procedural enlightenment from the United States Bureau of Prisons long before petitioners left Alcatraz.

The duty imposed upon prosecuting officers by article I, section 13, of the Constitution and Penal Code, section 1050, embraces an obligation to employ all means reasonably available to bring an accused promptly to trial. Such officers grossly neglected their obligation when they declined, over a period of 18 years, to take the necessary steps to obtain custody of petitioners and to bring them to trial.

This is not a case where the petitioners could be deemed to have acquiesced in or agreed to the unexcused denial of their right to a speedy trial. (*People* v. *Morino, supra,* 85 Cal. 515, 517; *In re Begerow, supra,* 133 Cal. 349, 351-352; *People* v. *George* (1949) 91 Cal.App.2d 537, 542-543 [205 P.2d 464].) On the contrary, although petitioners did not exhaust every possible judicial remedy to achieve a speedy trial, their repeated requests for trial are more than sufficient to demonstrate that they wished to be brought to trial as promptly as the circumstances would permit.

We can only infer that the true reason for the delay is that suggested by the letter of July 26, 1954, in which the then district attorney stated that his intention was to "let the matter remain in status quo as long as it is possible," and that petitioners "can sit and rot in prison for the rest of their

lives.'' The Supreme Court of the United States has stated that the delay was of the type ''caused either by willful be purposeful or oppressive.'' (*Pollard* v. *United States, supra,* 352 U.S. at p. 361.) We are thus compelled to conclude that the delay was of the type ''caused either by willful oppression, or the neglect of the state or its officers'' which the constitutional provision for speedy trial is designed to prevent. (*In re Begerow, supra,* 133 Cal. 349, 355.)

Let a peremptory writ issue directing the respondent court to dismiss the complaint and otherwise to abstain from proceeding against petitioners.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.