[No. A055567. First Dist., Div. Four. May 29, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
LARRY E. BELTON, SR., Defendant and Respondent.

---

COUNSEL

William A. Cornell II, District Attorney, James Fallman and Leroy Davies, Deputy District Attorneys, for Plaintiff and Appellant.

Mario de Solenni, under appointment by the Court of Appeal, for Defendant and Respondent.

---

OPINION

POCHÉ, Acting P. J.—The People appeal from an order dismissing an information (Pen. Code, § 1238, subds. (a)(1) and (8)) which charged Larry Belton, an inmate at Pelican Bay State Prison, with the felony of possessing a weapon while confined in state prison (Pen. Code, § 4502).

By a complaint filed in justice court on September 13, 1991, the People charged Mr. Belton with having been in possession of a weapon some six months earlier on March 8, 1991. An information containing the same allegation was filed in superior court on October 8, 1991, and two days later Mr. Belton was arraigned. Mr. Belton moved to dismiss the information, arguing that the delay in bringing the charge against him deprived him of his constitutional and statutory rights to a speedy trial. The trial court agreed, granting his motion to dismiss.

The People make a timely appeal contending that the trial court erred in applying statutory speedy trial provisions to delay occurring before any charges were filed, and in concluding that Mr. Belton had suffered any actual prejudice from the delay.

*Discussion*

I. *Speedy Trial Claim*

The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution which provides that "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . ." Essentially the same right is guaranteed by our California Constitution in article I, section 15, a provision which "reflects the letter and spirit" of the Sixth

Amendment. (*Harris* v. *Municipal Court* (1930) 209 Cal. 55, 60 [285 P. 699].)

■ The federal speedy trial right attaches once a defendant is accused. (*United States* v. *Lovasco* (1977) 431 U.S. 783, 788-789 [52 L.Ed.2d 752, 758-759, 97 S.Ct. 2044].) A person stands accused once a formal indictment or information is filed or he or she is subject to the "actual restraints imposed by arrest and holding to answer a criminal charge." (*United States* v. *Marion* (1971) 404 U.S. 307, 320 [30 L.Ed.2d 468, 479, 92 S.Ct. 455].) The California speedy trial right has been held to be broader than the federal right in that it attaches as early as the filing of a complaint. (*Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 248, fn. 6 [219 Cal.Rptr. 420, 707 P.2d 793]; *People* v. *Hill* (1984) 37 Cal.3d 491, 497, fn. 3 [209 Cal.Rptr. 323, 691 P.2d 989]; *People* v. *Hannon* (1977) 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203].) Whether *Serna*, *Hill* and *Hannon* are still valid on this point after passage in June 1990 of Proposition 115,[1] need not concern us in light of the fact that defendant complains not about delay occurring after the filing of the complaint or the information, but about the six-month delay which occurred before any charge at all was filed.

■ The Sixth Amendment of the United States Constitution and California Constitution, article I, section 15 guarantees to a speedy trial do not, however, protect against preaccusation delays. To the extent there is protection from such delay it arises either from statutes of limitations (*Barker* v. *Municipal Court* (1966) 64 Cal.2d 806, 812 [51 Cal.Rptr. 921, 415 P.2d 809]), or from the due process clause of the Fifth Amendment upon a showing of actual prejudice. (*United States* v. *Marion, supra*, 404 U.S. at pp. 323-324 [30 L.Ed.2d. at pp. 480-481].) As the United States Supreme Court explains: "The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations." (*United States* v. *MacDonald* (1982) 456 U.S. 1, 8 [71 L.Ed.2d 696, 704, 102 S.Ct. 1497].)

■ Defendant maintained below as he does on appeal that the incident which caused his speedy trial rights to attach was his segregation from the main prisoner population into administrative segregation and after one night there into the security housing unit (SHU). He argues that the curtailment of

---

[1] As enacted by Proposition 115, article I, section 24 of the California Constitution now provides in pertinent part: "In criminal cases the rights of a defendant . . . to a speedy and public trial . . . shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States . . . ."

his albeit already limited freedoms and privileges by this change in his custody was an "arrest" such as to trigger his constitutional speedy trial rights.

On the day of the incident Mr. Belton was given an order for his placement in segregated housing "because on 3-8-91 you were found to be in possession of an inmate made weapon. Therefore, you are deemed a threat to the safety and security of this institution. You will remain in administrative segregation pending review by the institution classification committee for future program and housing needs."

Mr. Belton testified that after he was seized by the guards he was manacled, locked in a cage, and read his *Miranda*[2] rights. He requested an attorney. In SHU his telephone, canteen, law library, and yard privileges were greatly curtailed. His prisoner classification was changed so that he was no longer able to earn $20 per month at his prison job, nor to accumulate work time/good time credits. He testified that the guards took various legal documents from him and refused to return them, which, Mr. Belton maintains, caused him to lose property in his marital dissolution proceeding. Finally, he argued that as a result of his detention in SHU he was ineligible for transfer to a less secure prison.

The crucial question is did the circumstances and consequences of Mr. Belton's treatment amount to an arrest. The People rely upon the Ninth Circuit case *United States* v. *Mills* (9th Cir. 1981) 641 F.2d 785. *Mills* holds that administrative segregation within a prison does not amount to arrest or accusal for speedy trial purposes. (*Id.* at p. 787.) The same result was reached in the earlier Ninth Circuit case *United States* v. *Clardy* (9th Cir. 1976) 540 F.2d 439. The reasoning in both cases is that while a prisoner who is confined to more secure housing within a prison may be subjected to greater physical restraints and permitted less freedom of association, those denials "bear little weight in the peculiar context of a penal institution where the curtailment of liberty is the general rule not the exception." (*Id.* at p. 441.)

In both *Mills* and *Clardy* the court looked to United States Supreme Court cases which identify the evils counteracted by the speedy trial guarantee. "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."

---

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

(*United States* v. *Marion, supra,* 404 U.S. at p. 320 [30 L.Ed.2d at p. 478]; see also *United States* v. *Ewell* (1966) 383 U.S. 116, 120 [15 L.Ed.2d 627, 630-631, 86 S.Ct. 773]; *Klopfer* v. *North Carolina* (1967) 386 U.S. 213, 222 [18 L.Ed.2d 1, 7-8, 87 S.Ct. 988].) While the disabilities suffered by someone who is already incarcerated are different, the injuries may be just as real. "[T]he fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." (*Smith* v. *Hooey* (1969) 393 U.S. 374, 378 [21 L.Ed.2d 607, 611, 89 S.Ct. 575].)

We must agree with the trial court that Mr. Belton suffered from many if not all of the evils normally associated with an arrest—he lost his prison employment, lost his right of transfer to a less secure institution, lost work time/good time credit, and was hampered in protecting his interests in his marital dissolution. However, his detention in segregated housing was a security measure required for the safety of the other inmates and the guards in the prison. To the extent that he had enjoyed greater liberty before his detention in SHU he did so only as was consistent with the safety needs of the prison. Were we to hold that every time an inmate was confined to segregated housing he was arrested, we would impose an intolerable burden upon local district attorneys. Because such confinement would automatically cause constitutional speedy trial rights to attach, the district attorney would be obliged to make an immediate charging decision without opportunity for investigation. The realistic result would be that virtually all offenses would result in criminal charges, regardless of whether charges were merited. ▮▮▮▮ We hold therefore that Mr. Belton's confinement in SHU did not trigger the speedy trial protections of the United States or California Constitutions.[3]

## II. *Statutory Claims*

▮▮ While the speedy trial provisions of the California Constitution are self-executing and thus not dependent upon statutory implementation (*Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90]), Mr. Belton also alleged that certain statutory speedy trial protections were denied him.

In the trial court Mr. Belton argued that the information should be dismissed because he was not brought before a magistrate within two days

---

[3]If the constitutional speedy trial right has attached then whether the defendant's right has been abridged is determined by an ad hoc balancing test which looks to: 1) the length of the delay; 2) the causes for that delay; 3) whether defendant asserted his right to a speedy trial; and 4) the prejudice to the defendant. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 530-532 [33 L.Ed.2d 101, 116-118, 92 S.Ct. 2182].) If the court concludes that defendant's speedy trial right has been abridged the remedy is dismissal of the charge. (*Strunk* v. *United States* (1973) 412 U.S. 434, 440 [37 L.Ed.2d 56, 61-62, 93 S.Ct. 2260].)

after his transfer to segregated housing. Penal Code section 825 provides that "a defendant" must be brought before a magistrate "without unnecessary delay, and, in any event, within two days after his or her arrest." (Pen. Code, § 825, subd. (a)(1).)[4]

We are unpersuaded that Mr. Belton was, at the time of his March transfer to SHU, a "defendant" within the meaning of this section. No complaint was filed against him until September 13, 1991. As we read the section the earliest possible point at which Mr. Belton could have become a defendant for the purposes of triggering Penal Code section 825 was on the date the complaint was filed.

Nor did Belton's placement in SHU constitute an arrest within the meaning of Penal Code section 825. Mr. Belton makes an additional argument as to why his placement in SHU constituted an arrest. Any act for which an inmate could be charged with a felony is a serious rule violation within a state prison. (Cal. Code Regs., tit. 15, § 3315, subd. (a)(1).) Such conduct subjects an inmate both to administrative sanctions and to criminal prosecution. Mr. Belton argues that because referrals from the prison to the district attorney for criminal prosecution are submitted on a Department of Justice form entitled "Disposition of Arrest and Court Action" (Cal. Code Regs., tit. 15, § 3316, subd. (c)) that the Department of Corrections must consider referral to be tantamount to arrest. We cannot agree; this is an instance where substance must triumph over form. Simply because the word "arrest" appears on a printed form does not transform all actions reported on that form into arrests.

Mr. Belton also contended to the trial court that he was denied his right to a speedy trial guaranteed by Penal Code section 1381. That section provides in pertinent part that "[i]f a charge is filed against a person during the time the person is serving a sentence in any state prison . . . it is hereby made mandatory upon the district attorney of the county in which the charge is filed to bring it to trial within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial . . . ."

Mr. Belton filed a Penal Code section 1381 demand with the District Attorney of Del Norte County on April 15, 1991. He made a second demand on April 18, 1991. On August 5, 1991, he made a demand under the section

---

[4]One statutory exception was made for defendants incarcerated in the state prison at Folsom: "Commencing on January 1, 1990, and continuing through January 1, 1992, whenever the defendant is incarcerated in the California State Prison at Folsom, the applicable time limitation under paragraph (1) shall be seven days." (Pen. Code, § 825, subd. (a)(2).)

to the California Attorney General. He contends that failure to bring him to trial within 90 days of his demand upon the Del Norte District Attorney must result in dismissal of the charge against him.

What he fails to acknowledge is that a charge was not filed against him until the complaint was filed in September. Thus, because no charge had been filed against him as of the date he made his demand, he was not a person described by Penal Code section 1381 and his demand did not have the effect of triggering the 90-day rule.

### III. *Due Process*

■ Delay which occurs before constitutional speedy trial rights attach may have the impact of denying a defendant due process. (*United States* v. *Lovasco, supra,* 431 U.S. at p. 790 [52 L.Ed.2d at p. 759]; *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 505 [149 Cal.Rptr. 597, 585 P.2d 219].) In order to establish a denial of due process the defendant must show that there was no legitimate reason for the delay or that it was intentional and that he was prejudiced by the delay. (*United States* v. *Marion, supra,* 404 U.S. at p. 324 [30 L.Ed.2d at pp. 480-481]; *Scherling* v. *Superior Court, supra,* 22 Cal.3d at p. 505; *People* v. *Archerd* (1970) 3 Cal.3d 615, 640 [91 Cal.Rptr. 397, 477 P.2d 421].)

Essentially, the due process test is the same under either the federal or the state constitutions. In the federal cases the defendant's burden is characterized as having to show actual prejudice. (*United States* v. *Marion, supra,* 404 U.S. at p. 324 [30 L.Ed.2d at pp. 480-481].) California authority stresses that prejudice will not be presumed and that the defendant bears the burden of proving actual prejudice. (*People* v. *Archerd, supra,* 3 Cal.3d at p. 640; but see *People* v. *Allen* (1979) 96 Cal.App.3d 268, 278-279 [158 Cal.Rptr. 54].) "We reject defendant's suggestion that we hold a presumption of prejudice arises whenever there is a delay between the commission of a crime and the time a formal charge is filed." (*Scherling* v. *Superior Court, supra,* 22 Cal.3d at p. 504, fn. 8.) The court then balances the prejudice to the defendant against the justification offered for the delay. (*Id.* at p. 505.)

■ In the case before us the trial court was urged to and did apply the four-factor balancing test set out for cases in which a constitutional guarantee of speedy trial has already attached. (*Barker* v. *Wingo, supra,* 407 U.S. at pp. 530-532 [33 L.Ed.2d at pp. 116-118]; *Tullis* v. *Superior Court* (1974) 41 Cal.App.3d 387, 392-393 [115 Cal.Rptr. 177].) That test was not the appropriate one to apply to this case where constitutional speedy trial rights had not yet attached. Moreover *Barker* "expressly rejected the notion that an

affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." (*Moore* v. *Arizona* (1973) 414 U.S. 25, 26 [38 L.Ed.2d 183, 185, 94 S.Ct. 188].) In short, prejudice may be presumed from a delay after the constitutional speedy trial right has attached, but prejudice must be proven to establish a due process claim based upon preindictment delay. In this case Mr. Belton had the obligation to prove actual prejudice.

At the hearing on the motion Mr. Belton testified to various witnesses who might support his account that the homemade knife had been planted in his legal papers by his cellmate in retaliation for Mr. Belton's having thwarted a scheme by the cellmate to extort money from Mr. Belton's mother. By his account he knew many of the inmate witnesses only by prison nickname, and did not know their full legal names or inmate numbers. His investigator testified that it would be pointless to seek information about the whereabouts of specific inmates unless he could provide prison authorities with a legal name and a Department of Corrections number. The investigator conceded, however, that he had not yet tried to locate the potential witnesses still at Pelican Bay.

For their part the People filed no affidavits in opposition to the motion to dismiss. At the hearing the deputy district attorney made an offer of proof that the reason for the delay was partly the result of the 60 to 80 files a week generated by the prison, the limited number of deputy district attorneys available, and a conscious choice by his office to charge Pelican Bay cases in batches as a matter of convenience and economy. On this showing the trial court concluded that there was "substantial delay" without sufficient justification for it.

The minute order in this case provides: "[t]he Court finds the delay to be 6 months, that the Defendant clearly asserted his rights for a speedy trial and that there is not sufficient evidence [of good cause] for the delay; therefore, Defendant's Motion to Dismiss is hereby granted . . . ." Thus, although Mr. Belton alleged that he had suffered actual prejudice from the delay, the court made no express finding of prejudice.

Because the court made no express finding of actual prejudice to Mr. Belton from the delay, we reverse and remand to the trial court in order for it to conduct the due process balancing test. We leave it to the sound discretion of the trial court to decide whether or not it wishes to receive additional evidence.

The order of dismissal is reversed, and the matter remanded to the trial court.

Perley, J., and Reardon, J., concurred.

Respondent's petition for review by the Suprme Court was denied August 12, 1992.