[No. G036155. Fourth Dist., Div. Three. June 30, 2006.]

LOUIS EUGENE CRAFT, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Deborah A. Kwast, Public Defender, Thomas Havlena, Chief Deputy Public Defender, Kevin J. Phillips and Martin F. Schwarz, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Brian N. Gurwitz, Deputy District Attorney, for Real Party in Interest.

## Opinion

**ARONSON, J.**—Louis Eugene Craft seeks a peremptory writ of mandate challenging the trial court's denial of his motion to dismiss a felony complaint charging him with possession of heroin and misdemeanor offenses for being under the influence of heroin, possession of a hypodermic needle, and urinating in public. Craft contends his lengthy pretrial incarceration violated his right to a speedy trial under the state Constitution and infringed due process under the federal and state Constitutions. At the preliminary hearing, the trial court found Craft incompetent to stand trial and suspended criminal proceedings. The trial court committed Craft to the state hospital for treatment but, for reasons never explained in the record, the court failed to issue the commitment and transportation order. Craft contends the ensuing 17 months he languished in jail—without treatment for the mental health condition on which the trial court predicated suspending criminal proceedings—requires either outright dismissal of the charges or reconsideration of his motion. For the reasons that follow, we conclude there

is no substantial evidence to support the trial court's finding Craft suffered no prejudice from the delay and, on remand, the court must weigh the prejudice against any reasons the prosecution may offer to justify the delay.

## I

## FACTUAL AND PROCEDURAL BACKGROUND

The district attorney filed the complaint against Craft on May 13, 2003, and he pleaded not guilty when arraigned on May 23, 2003. At the preliminary hearing on June 6, 2003, the public defender expressed doubts about Craft's mental competency. The trial court suspended criminal proceedings (Pen. Code, § 1368, subd. (c); all further statutory references are to this code) and appointed two experts to evaluate Craft's mental condition (§ 1369, subd. (a)).

Based on the experts' reports, the trial court on July 25, 2003, found Craft incompetent to stand trial (§ 1369). The court ordered the Orange County Health Care Agency (HCA) to evaluate Craft and recommend a course of treatment (§ 1370, subd. (a)(2)), which the court apparently assumed would be inpatient care at the state hospital. The court's minute order states: "The Clerk of the Court shall submit the necessary documents to [HCA] and upon receipt of recommendations by that Department, a commitment will issue without further hearing." The minute order further provided: "The Sheriff is directed to deliver the defendant to Patton [State] Hospital upon receipt of the commitment packet."

On August 13, 2003, HCA submitted its report recommending inpatient treatment at Patton, but the trial court never issued a commitment order (§ 1370, subd. (a)(1)(B)(i)), and Craft remained in jail. The record does not reveal how the error was discovered, but on December 20, 2004, almost 17 months after the trial court determined Craft was incompetent, Craft was brought back to court. (Cf. § 1370, subd. (b)(2) [requiring that issue of mental competence be retried after 18 months for any defendant committed or on outpatient status].) The court ordered a new inquiry to determine whether Craft remained incompetent, appointing the same two experts. (§ 1369.) Because the new reports found little changed in Craft's mental state, the trial court on January 25, 2005, appointed a third psychologist to determine whether antipsychotic medication would likely restore the defendant's competence. The court also ordered HCA to again recommend a course of treatment.

On April 8, 2005, the trial court concluded based on the psychologist's report that "involuntary administration of medications . . . would not be beneficial in this instance, therefore no medications will be given to the defendant." HCA again recommended commitment to Patton, and the trial court accordingly ordered Craft's commitment and transportation. (§ 1370.) The sheriff duly transported Craft to Patton.

On August 25, 2005, the public defender filed a motion on Craft's behalf requesting dismissal of the complaint for denial of due process and a speedy trial. (See § 977.1.)[1] The district attorney filed no responsive brief. The trial court commenced the hearing by questioning "whether dismissal is the appropriate remedy" and "whether there is prejudice sustained by Mr. Craft . . . ." The public defender answered that "one of the three meaningful rights that [the] speedy trial guarantee is meant to protect—it is meant to protect a defendant against oppressive pretrial incarceration, meant to protect the defendant from languishing in jail without good cause and that is what we have here." The district attorney countered that the defense had made "no showing of actual prejudice to the defendant's right to receive a fair trial." The trial court ended the hearing unpersuaded by the defense and, because the court found no prejudice, it did not require the prosecution to justify the delay. Craft now pursues this writ.

II

DISCUSSION

Craft contends the nearly 17 months he languished in jail violated his right to a speedy trial. He limits his challenge to the period between July 25, 2003, when the trial court determined he was incompetent to stand trial, and December 20, 2004, when authorities discovered he remained in jail and brought him back to court. Craft does not attack the additional three and one-half month's, delay during which the trial court had his mental health reevaluated, determined he remained incompetent, received HCA's concurring report and, on April 8, 2005, dispatched him to the state hospital for treatment.

---

[1] Section 977.1 provides: "The resolution of questions of fact or issues of law by trial or hearing which can be made without the assistance or participation of the defendant is not prohibited by the existence of any pending proceeding to determine whether the defendant is or remains mentally incompetent or gravely disabled pursuant to the provisions of either this code or the Welfare and Institutions Code."

The district attorney on appeal does not offer any justification for the lengthy delay. He does not dispute Craft's characterization of his plight as a misplaced and forgotten prisoner, but assigns "the lion's share" of any blame to Craft's counsel for failing to verify his client's transfer to Patton.[2] Opposing Craft's petition, the district attorney relies primarily on the trial court's conclusion the incarceration caused Craft no harm. Before discussing this conclusion or addressing the district attorney's other arguments, we review in some detail the applicable speedy trial principles and procedures.

■ Both the state and federal Constitutions guarantee criminal defendants the right to a speedy trial (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1), "and both guarantees operate in state criminal prosecutions . . . ." (*People v. Martinez* (2000) 22 Cal.4th 750, 754 [94 Cal.Rptr.2d 381, 996 P.2d 32] (*Martinez*).) Additionally, "[t]he statutory speedy trial provisions, Penal Code sections 1381 to 1389.8, are 'supplementary to and a construction of' the state constitutional speedy trial guarantee."[3] (*Martinez*, at p. 766.)

■ Craft does not assert a federal speedy trial violation. And because criminal proceedings have been suspended, he finds himself outside the terms of statutory provisions assuring a speedy prosecution.[4] Accordingly, his

---

[2] A public defender represented Craft. Public defenders are state actors (see *Gomez v. Municipal Court* (1985) 169 Cal.App.3d 425, 432 [215 Cal.Rptr. 206] [crowded calendar of the petitioner's public defender was not good cause for delay]) and "[t]he risk of delay caused by those charged with official action rests with [the] People, not the defendant." (*Jackson v. Superior Court* (1991) 230 Cal.App.3d 1391, 1394 [281 Cal.Rptr. 545]; *id.* at p. 1393 ["A defendant's right to speedy trial cannot be stifled by procrastination or neglect by public officials"].) As our Supreme Court has explained, "Because appointed counsel are furnished by the state, fault or neglect by such counsel may . . . result in the dismissal of charges." (*People v. Johnson* (1980) 26 Cal.3d 557, 573, fn. 17 [162 Cal.Rptr. 431, 606 P.2d 738].) But not so for defense tactics calculated to win an unwarranted dismissal, such as "deliberately . . . overbook[ing]" one's calendar. (*Ibid.*)

[3] Section 1382, subdivision (a), for example, provides that a court "shall order the action to be dismissed" if an information is not filed within 15 days after the accused "has been held to answer for a public offense" (*id.*, subd. (a)(1)), and dismissal likewise follows if a defendant charged with a felony "is not brought to trial within 60 days of the defendant's arraignment on an indictment or information . . . ." (*Id.*, subd. (a)(2); see § 686 [explicit statutory recognition of defendant's right to a "speedy and public trial"]; see also §§ 825, 847, 859, 859b [restricting delays by providing for presentation before a magistrate, arraignment, and a preliminary hearing "without unnecessary delay"].)

[4] See, e.g., section 1382, subdivision (a), which enforces the speedy trial right with deadlines measured by days before or after arraignment or other prosecution events, all of which have been suspended here.

Other statutory provisions, such as those requiring periodic mental health reports (§§ 1370, subd. (b)(1), 1370.1, subd. (b)(1)), protect the mentally incompetent defendant's speedy trial interests by keeping the court apprised of his or her progress towards competency and an eventual trial. (See also, e.g., §§ 1370, subd. (a)(1)(B)(i)) [purpose of commitment is to "promote the defendant's speedy restoration to mental competence"], 1372, subd. (a)(2) [sheriff must return defendant to court within 10 days of competency being restored].) Such

speedy trial claim rests only on the state Constitution. (See *Sykes v. Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90] [speedy trial provision is "self-executing" and therefore not dependent on legislative implementation].) The Constitution provides: "The defendant in a criminal cause has the right to a speedy public trial." (Cal. Const., art. I, § 15, cl. 1.)

■ The right to a speedy trial " 'serves a three-fold purpose . . . .' " (*Barker v. Municipal Court* (1966) 64 Cal.2d 806, 813 [51 Cal.Rptr. 921, 415 P.2d 809].) " 'It protects the accused . . . against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and . . . it prevents him from being "exposed to the hazard of a trial, after so great a lapse of time" that "the means of proving his innocence may not be within his reach"—as, for instance, by the loss of witnesses or the dulling of memory.' " (*Ibid.*) The question posed in evaluating a speedy trial claim is whether delay at the state's hands unreasonably prejudices these interests. (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 249 [219 Cal.Rptr. 420, 707 P.2d 793] (*Serna*); *Scherling v. Superior Court* (1978) 22 Cal.3d 493, 505 [149 Cal.Rptr. 597, 585 P.2d 219] (*Scherling*).) The test is necessarily a balancing one: "prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Scherling, supra,* 22 Cal.3d at p. 505.)

Craft acknowledges the initial burden lies with the defendant to demonstrate prejudice to one or more of his interests.[5] (*Martinez, supra,* 22 Cal.4th at p. 755.) A prima facie showing satisfies the defendant's burden. (*Garcia v. Superior Court* (1984) 163 Cal.App.3d 148, 151 [209 Cal.Rptr. 205]; see *Ibarra v. Municipal Court* (1984) 162 Cal.App.3d 853, 858 [208 Cal.Rptr.

---

monitoring helps assure the mentally incompetent defendant does not simply "disappear" while in state custody. These statutory safeguards, however, failed to prevent Craft from slipping through the cracks. The periodic mental health reports are to be made within 90 days of commitment *and every six months thereafter by* "the medical director of the state hospital or other treatment facility to which the defendant is confined" (§ 1370, subd. (b)(1)), or by the outpatient treatment staff at identical intervals if the defendant is on outpatient status (*ibid.*). But because Craft was neither committed to the state hospital nor placed on outpatient status during the 17-month period under review, no one prepared any reports updating the court on his mental health, let alone his whereabouts.

[5] As *Martinez* observed, this is an important distinction attending the particular speedy trial right asserted, since prejudice may be presumed under the Sixth Amendment where the delay is " 'uncommonly long.' " (*Martinez, supra,* 22 Cal.4th at p. 755, citing cases.) Similarly, in the pretrial stage, "[n]o affirmative showing of prejudice is necessary to obtain a dismissal for violation of the state constitutional speedy trial right *as construed and implemented by statute.* [Citation.] Instead, 'an unexcused delay beyond the time fixed in section 1382 of the Penal Code without defendant's consent entitles the defendant to a dismissal.' [Citation.]" (*Id.* at p. 766.)

783] ["minimal" prejudice shifted burden to prosecution to justify delay].) After the prosecution has had an opportunity to justify the delay, the trial court weighs the justification against the actual prejudice suffered by the defendant. (*People v. Roybal* (1998) 19 Cal.4th 481, 513 [79 Cal.Rptr.2d 487, 966 P.2d 521]; *Serna, supra,* 40 Cal.3d at p. 249.) The trial court must engage in the balancing process only if the defendant has shown actual prejudice. (*Scherling, supra,* 22 Cal.3d at pp. 505–507.) The reason is simple: "If defendant fails to show prejudice, the court need not inquire into the justification for the delay since there is nothing to 'weigh' such justification against." (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 910 [55 Cal.Rptr.2d 404].)

Craft argues the trial court mistakenly believed his initial burden required proof the 17-month delay hampered his defense, and that no other showing of prejudice would suffice. We presume, however, that the trial court understood the law (see *People v. Penoli* (1996) 46 Cal.App.4th 298, 305 [53 Cal.Rptr.2d 825]), including that a defendant's speedy trial interests are three-fold.

True, *the district attorney* argued below, "There is no showing of actual prejudice to the defendant's right to receive a fair trial. . . . [N]othing to indicate that memories have faded or evidence is no longer obtainable." In support, the prosecutor relied on the following observation in *Martinez*: "[W]hen the claimed speedy trial violation is not also a violation of any statutory speedy trial provision, this court has generally required the defendant to affirmatively demonstrate that the delay has prejudiced the ability to defend the charge." (*Martinez, supra,* 22 Cal.4th at p. 766, citing *Crockett v. Superior Court* (1975) 14 Cal.3d 433, 438–440 [121 Cal.Rptr. 457, 535 P.2d 321] (*Crockett*).)

But neither *Martinez* nor *Crockett* involved speedy trial claims resting upon prolonged incarceration or the anxiety attending an untried accusation. *Martinez* expressly recognized these interests as two of the three—the third being the defendant's interest in a fair trial—"that this court has identified as protected by the speedy trial right." (*Martinez, supra,* 22 Cal.4th at p. 767.) Although a snippet out of *Martinez* pronounces that "the state Constitution's speedy trial guarantee serves primarily the interest in fair adjudication," the context of the statement limits its applicability to situations where "the defendant is not subject to restraints following arrest and has not been held to answer [nor is] formally charged in the court having jurisdiction to try the offense or offenses alleged," in which case, "the first two concerns are implicated little or not at all . . . ." (*Martinez, supra,* 22 Cal.4th at p. 768.)

Cases since *Barker v. Municipal Court* have uniformly recognized the interests protected by the state speedy right are tripartite and include the defendant's interest in avoiding prolonged incarceration (see, e.g., *People v. Broughton* (2003) 107 Cal.App.4th 307, 318 [133 Cal.Rptr.2d 161]; *People v. Simpson* (1973) 30 Cal.App.3d 177 [106 Cal.Rptr. 254]; *People v. Brown* (1968) 260 Cal.App.2d 745, 751 [67 Cal.Rptr. 288]), and nothing in *Martinez* or *Crockett* suggests an intent to overrule these well established principles.

On appeal, the district attorney concedes the state Constitution's speedy trial guarantee protects "against forms of prejudice that do not directly impact an accused's right to a fair trial—e.g., the anxiety that may arise from pretrial incarceration and the public accusation of criminal wrongdoing." There can be no doubt the state constitutional speedy trial right protects against prolonged incarceration, even if defendant's ability to defend against the charges has not been compromised. In *Barker v. Municipal Court*, for example, the Supreme Court found the right implicated by the possible loss of concurrent sentences. (*Barker v. Municipal Court, supra,* 64 Cal.2d at pp. 813–814; see *People v. Martinez* (1995) 37 Cal.App.4th 1589, 1593 [44 Cal.Rptr.2d 673] [same].) And long ago, the court recognized the speedy trial right guards against the evil lamented by Blackstone, where " 'persons apprehended upon suspicion have suffered long imprisonment, merely because they were forgotten.' " (*In re Begerow* (1901) 133 Cal. 349, 355 [65 P. 828].)

The trial court was not persuaded that defendant's showing of 17 months of pretrial incarceration—without treatment for the condition supposedly justifying a suspension of statutory speedy trial protections—demonstrated prejudice. Because the issue of prejudice is a factual determination (*People v. Hill* (1984) 37 Cal.3d 491, 499 [209 Cal.Rptr. 323, 691 P.2d 989]; *People v. Martinez, supra,* 37 Cal.App.4th at pp. 1593, 1594), we review the trial court's conclusion for substantial evidence. No substantial evidence supports the court's determination. As discussed above, the defendant's minimal burden required only a prima facie showing of prejudice before the prosecution had to justify the delay; here, we find it difficult to imagine more compelling facts demonstrating prejudice.

While it is true that delay alone, even delay that is "uncommonly long," is not enough to demonstrate prejudice (*Martinez, supra,* 22 Cal.4th at p. 755), Craft showed prejudice in two ways that went beyond merely pointing to the 17 months between his court appearances. First, he spent those 17 months in

jail. Second, those 17 months of incarceration were unaccompanied by the course of treatment that served as the basis for the trial court's suspension of proceedings.

Jails are not meant to be pleasant places. The United States Supreme Court has observed that a defendant confined to jail before trial is "obviously" disadvantaged by delay (*Barker v. Wingo* (1972) 407 U.S. 514, 527 [33 L.Ed.2d 101, 92 S.Ct. 2182]), a proposition evident to anyone remotely acquainted with life behind bars. The high court elaborated: "[T]ime spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. [Fn. omitted.] The time spent in jail is simply dead time. . . . Imposing those consequences on anyone who has not yet been convicted is serious." (*Id.* at pp. 532–533.) The court made these observations in the context of a Sixth Amendment claim, but we perceive no reason they should not apply in the present context.

Nevertheless, the mere fact of pretrial incarceration, however unpleasant, is not enough to implicate the speedy trial right; rather, the time spent in confinement must be "prolonged." (*Barker v. Municipal Court, supra,* 64 Cal.2d at p. 813.) Although it describes the converse scenario, *People v. Simpson, supra,* 30 Cal.App.3d 177, is instructive. There, the defendant had been restored to competency but, despite notice to the court, remained confined at the state hospital for almost nine months. (*Id.* at p. 180.) The *Simpson* court determined the prolonged delay was prejudicial, concluding that "eight or nine unnecessary months in a mental institution must be characterized as oppressive." (*Id.* at p. 185.) The court did not focus on the prejudice stemming from the particular place of confinement, but rather the days and months forever lost: "Time is an irretrievable commodity. Broken bones may knit, mistakes may be rectified, burned houses may be rebuilt, damaged cars repaired, but time once past can never be recovered. Eight or nine months is a substantial delay." (*Id.* at p. 183.) While the court made these observations in the context of a federal speedy trial claim, they are just as applicable here.

 We need not determine exactly when incarceration becomes so lengthy as to be categorized as "prolonged" and therefore prejudicial. In light of Craft's undisputed showing he was not transported to the state hospital to receive the treatment on which the court predicated suspending criminal proceedings (§ 1370, subd. (a)(1)(B)), we conclude the 17-month period requires justification, particularly when measured against the much shorter timeframes established by the Legislature. (§ 1382, subd. (a); see *Crockett,*

*supra,* 14 Cal.3d at p. 439 [courts may "look[] to legislative enactments to construe and give meaning to our constitutional provision for a speedy trial"].) Of course, the necessity of ascertaining a defendant's competency and arranging for any needed treatment are reasonable bases for prolonging pretrial incarceration beyond the presumptively prejudicial periods delineated in section 1382. (*People v. McGill* (1968) 257 Cal.App.2d 759, 761 [65 Cal.Rptr. 482]; see also *People v. Lohman* (1970) 6 Cal.App.3d 760, 769 [86 Cal.Rptr. 221] [delay for purpose of determining present sanity does not deny right to speedy trial], disapproved on another ground in *People v. Allen* (1999) 21 Cal.4th 846, 863, 866, fn. 21 [89 Cal.Rptr.2d 279, 984 P.2d 486].) But when, as here, incarceration is extended to nearly 10 times the 60-day limit from arraignment prescribed by section 1382,[6] *without any steps taken to address the mental condition supposedly justifying differential treatment,* the result can only be prejudicial, shifting the burden to the prosecution for an explanation. We observe that these two factors, the extreme length of the delay and the lack of any treatment, make the People's burden of explanation a heavy one.

The district attorney discounts any prejudice by characterizing Craft's jailing as a foul-up in which the accused was merely "housed at the wrong facility." Such a cavalier attitude ignores the "serious" nature of imprisonment (*Barker v. Wingo, supra,* 407 U.S. at p. 532) and the opprobrium surrounding a lengthy stint in jail. The district attorney points to a lack of evidence in the record "to establish that petitioner subjectively considered his incarceration at the Orange County Jail more oppressive than what he would have experienced at a mental institution," but prolonged jail time implicates the defendant's speedy trial rights (see *Barker v. Municipal Court, supra,* 64 Cal.2d at p. 813), without regard to any qualitative comparison to state hospital confinement. And the constitutional premium on personal liberty presumes that all persons, including the mentally impaired, prefer freedom to incarceration. (See, e.g., *Jackson v. Indiana* (1972) 406 U.S. 715, 731, 737 [32 L.Ed.2d 435, 92 S.Ct. 1845] [due process prohibits indefinite commitment of a mentally incompetent criminal defendant merely because he cannot stand trial; rather, dangerousness to self or others, need for treatment or similar proof required]; cf. *Robinson v. California* (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417] [cruel and unusual to convict and imprison based merely on defendant's status as drug-addict].)

█ In *In re Davis* (1973) 8 Cal.3d 798 [106 Cal.Rptr. 178, 505 P.2d 1018], our Supreme Court reached the same conclusion the United States Supreme

---

[6] Defendant's arraignment took place on May 23, 2003, and, as discussed, after the court determined he was incompetent on July 25, 2003, he nevertheless remained in jail until December 20, 2004, when the court initiated additional proceedings to redetermine his competency.

Court reached in *Jackson v. Indiana*: "[D]ue process demands that the duration of commitments to state hospitals must bear some reasonable relation to the purpose which originally justified the commitment." (*In re Davis*, at p. 805.) Where "no reasonable progress [is made] toward that goal," the criminal defendant "must be released or held subject to alternative commitment procedures." (*Id.* at p. 806.) Because commitment and treatment are the intertwined rationales for suspending criminal proceedings against a mentally incompetent defendant (see § 1370, subd. (a)(1)(B)), it follows that where there is no commitment and no treatment, the time an incompetent defendant spends in jail is unnecessary and implicates not only due process, but also counts towards a finding of prolonged incarceration under the state constitutional speedy trial guarantee.

Finally, the district attorney contends the speedy trial right does not apply because trial proceedings have been suspended. (§ 1370, subd. (a)(1)(B).) Phrased differently, the district attorney argues that, until defendant recovers his competency, the trial court cannot provide him with a trial, speedy or otherwise. These tautologies, however, fail to account for important interests protected by the speedy trial guarantee apart from a defendant's ability to defend against criminal charges. Specifically, the constitutional guarantee protects against prolonged incarceration of persons presumed innocent and serves to minimize anxiety while they await resolution of the case against them. As Craft observes, the speedy trial right not only shelters the defendant with a prospective eye to an eventual trial, but safeguards immediate interests. And because the right attaches with the filing of the complaint (*Martinez, supra*, 22 Cal.4th at p. 765), proceedings thereafter must be viewed in light of *all* the interests protected by the speedy trial clause.

Because the district attorney is entitled under the established burden-shifting procedure to justify defendant's prolonged pretrial incarceration, due process precludes us from granting Craft's petition for outright dismissal. Accordingly, we grant his alternative request for a writ of mandate directing the trial court to vacate its ruling and conduct a new hearing at which the People may offer an explanation, if any, justifying the state's prolonged confinement of Craft in jailhouse quarters, and the trial court shall then balance the prejudice shown by Craft with any justification proffered before ruling on Craft's motion to dismiss.[7]

---

[7] We need not address Craft's due process claim since it affords him no greater relief: "[R]egardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Scherling, supra*, 22 Cal.3d at p. 505.) In other words, outright dismissal is not an option because a new hearing is required to weigh any justification provided.

## III

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Craft's motion to dismiss and to conduct a new and different hearing on the motion consistent with this opinion.

Bedsworth, Acting P. J., and Fybel, J., concurred.