Filed 9/6/13  P. v. Figueroa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EFFREN ABELAR FIGUEROA,<br><br>    Defendant and Appellant. | G046684<br><br>(Super. Ct. No. 00CF3480)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed as modified.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Effren Abelar Figueroa appeals following his conviction for four counts of committing a forcible lewd act on a child under 14 years old, and two counts of committing a lewd act upon a child under 14 years old.  As to each count, the jury found true the enhancement allegations that Figueroa had engaged in substantial sexual conduct with his victims, who were children under 14 years of age, and had committed an offense specified in Penal Code section 667.61, subdivision (c) against more than one victim. (All further statutory references are to the Penal Code.)

Figueroa contends the trial court erred by denying his motion to dismiss the information because his rights to due process and to a speedy trial under the United States and California Constitutions were violated by the almost nine-year delay between the filing of the felony complaint in December 2000 and his arrest in 2009.  He also contends the trial court erroneously interpreted the version of section 667.61 applicable at the time he committed the offenses (former section 667.61), in imposing 15-year-to-life sentences for each of the offenses he committed against A.C.; he argues former section 667.61 authorized a single 15-year-to-life sentence per victim.  Figueroa further contends the trial court's order prohibiting visitation between him and his victims (who are no longer minors) was in error; the Attorney General agrees.

We modify the judgment to strike the trial court's order prohibiting visitation between Figueroa and any of his victims because the court was without authority to issue such an order as all three victims were at least 18 years of age at the time of sentencing.  (§ 1202.05, subd. (a).)  We otherwise affirm the judgment in its entirety.  The trial court properly denied Figueroa's motion to dismiss the information because (1) his federal constitutional right to a speedy trial had not been triggered by the filing of the felony complaint; and (2) although his right to a speedy trial under the California Constitution was triggered by the filing of the felony complaint, Figueroa failed to make a prima facie showing that he suffered actual prejudice as a result of the

delay. (*People v. Martinez* (2000) 22 Cal.4th 750 (*Martinez*).) Figueroa's argument his constitutional due process rights were violated is without merit because Figueroa failed to show actual prejudice and also failed to show intentional delay by the prosecution.

FACTS

Figueroa does not argue that insufficient evidence supported any of his convictions. We summarize the facts to provide relevant background.

From February 2000 until July 2000, Figueroa and his girlfriend, Asiyabed Leyva Naverrete, rented a bedroom from M.B. in her Santa Ana apartment. M.B., her six-year-old daughter, A.C., M.B.'s sister, her sister's husband, and her sister's eight-year-old son, L.Z., lived in the apartment when Figueroa and Naverrete lived there.

Figueroa had a Nintendo game system and frequently invited A.C. to play video games in his bedroom; L.Z. would play the video games with A.C. She testified that Naverrete was never in the bedroom with Figueroa, A.C., and L.Z.

On one occasion, after Figueroa had invited A.C. and L.Z. into his bedroom, he told L.Z. to sit on the floor and play a video game. Figueroa touched A.C.'s arm, kissed her on the mouth, and put his tongue in her mouth. After A.C. tried to "push him off," Figueroa grabbed her, removed her clothes, got on top of her, and put his penis on her vagina. After Figueroa ejaculated on A.C., he told her to clean herself up and warned her that if she ever "told anybody," he would harm her mother and "would put the blame on [A.C.]."

A.C. testified that Figueroa had rubbed his penis on her vagina on more than one occasion. She stated L.Z. was present "[m]ost of the time" Figueroa engaged in this conduct. A.C. described another occasion when she and L.Z. were playing video games in Figueroa's bedroom that Figueroa touched A.C.'s vagina with his fingers.

On another occasion, when A.C. and L.Z. were playing video games in Figueroa's bedroom, Figueroa told them to "suck his penis." He then turned on a "porn

3

movie" on the television, which showed "[a] female and a male having sex." After showing A.C. and L.Z. the movie, Figueroa grabbed A.C.'s head and put his penis in her mouth. Figueroa then did the "same thing" to L.Z., i.e., he grabbed L.Z.'s head and put his penis in L.Z.'s mouth.

A.C. testified that there were two other occasions when Figueroa "ma[d]e [A.C.] put his penis in [her] mouth"; Figueroa engaged in this conduct in his bedroom and in L.Z.'s presence.

L.Z. testified that on one occasion, Figueroa rubbed oil on his own penis, had L.Z. lie face down on the floor, and sodomized L.Z. He had seen Figueroa do the "same thing" to A.C., although L.Z. was not sure whether Figueroa had sodomized her or put his penis in her vagina.

A.C. and L.Z.'s cousins, then six- or seven-year-old I.R. and her younger sister, frequently went to the apartment to play. I.R. testified that Figueroa touched her vagina under her clothes when she was at the apartment and that she saw Figueroa put his hands down A.C.'s and I.R.'s younger sister's pants.

After Figueroa moved out of the apartment, A.C. told M.B. what Figueroa had done. M.B. called the police.

Figueroa testified at trial. He denied ever molesting A.C., L.Z., or I.R., or touching them in a sexual way, and denied owning any pornographic movies or showing any to A.C. and L.Z.


BACKGROUND

In December 2000, Figueroa was charged in a felony complaint with two counts of committing a lewd act upon a child under 14 years of age, in violation of section 288, subdivision (a), and three counts of committing oral copulation of a child under 14 years of age, in violation of section 288a, subdivision (c). The warrant for

4

Figueroa's arrest was served by the Santa Ana Police Department on September 4, 2009, and Figueroa was arraigned on the felony complaint on September 8, 2009.

In October 2011, Figueroa was charged in an information, which, as amended (the information), alleged (1) four counts of committing a forcible lewd act on A.C., who was a child under 14 years of age, in violation of section 288, subdivision (b)(1) (counts 1-4); (2) one count of committing a lewd act upon I.R., who was a child under 14 years of age, in violation of section 288, subdivision (a) (count 5); and (3) one count of committing a lewd act upon L.Z., who was a child under 14 years of age, in violation of section 288, subdivision (a) (count 6).[1]

The information alleged, as to each count, that pursuant to former section 667.61, subdivisions (b) and (e)(5), Figueroa committed an offense specified in former section 667.61, subdivision (c) against more than one victim. The information further alleged, as to each count, that, pursuant to section 1203.066, subdivision (a)(8), Figueroa had substantial sexual conduct with his victim.

Before trial, Figueroa filed a motion to dismiss the information on the ground his rights to due process and a speedy trial under both the United States and California Constitutions were violated; the trial court denied the motion.

The jury found Figueroa guilty on all counts and found true all of the enhancement allegations as to those counts. Figueroa filed a motion seeking reconsideration of the denial of his motion to dismiss for violation of his rights to due process and a speedy trial. The trial court denied the motion.

The trial court sentenced Figueroa to a total prison term of 45 years to life by imposing a consecutive 15-year-to-life term for each of counts 1, 2, and 3, and by

---

[1] The information contained a seventh count, alleging Figueroa committed a second lewd act upon L.Z., in violation of section 288, subdivision (a). The trial court granted the prosecution's motion during trial to dismiss that count.

5

imposing a 15-year-to-life term, to run concurrent with the sentence imposed for count 1, for each of counts 4, 5, and 6. Figueroa appealed.

DISCUSSION

I.

FIGUEROA'S CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL AND
DUE PROCESS WERE NOT VIOLATED.

Figueroa contends the trial court erred in denying his motion to dismiss the information because "the delay of nearly nine years between the filing of the felony complaint and issuance of an arrest warrant and the date [he] was served with the warrant denied [him] his state and federal constitutional rights to a speedy trial and due process." (Capitalization omitted.) For the reasons we will explain, Figueroa's argument is without merit.

In *Martinez*, *supra*, 22 Cal.4th at pages 754-755, the California Supreme Court addressed the scope of the federal and state constitutional rights to a speedy trial and due process as follows: "The state and federal Constitutions both guarantee criminal defendants the right to a speedy trial [citations], and both guarantees operate in state criminal prosecutions [citation], but there are two important differences in the operation of the state and federal constitutional rights as construed by our courts. [¶] The first difference concerns the point at which the speedy trial right attaches. Under the *state* Constitution, the filing of a felony complaint is sufficient to trigger the protection of the speedy trial right. [Citations.] Under the *federal* Constitution, however, the filing of a felony complaint is by itself insufficient to trigger speedy trial protection. [Citation.] The United States Supreme Court has defined the point at which the federal speedy trial right begins to operate: '[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.'"

6

The *Martinez* court explained: "The second difference is in the showing that a defendant must make to obtain a dismissal for violation of the speedy trial right. For the *federal* Constitution's speedy trial right, the United States Supreme Court has articulated a balancing test that requires consideration of the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defense caused by the delay. [Citation.] Because delay that is 'uncommonly long' triggers a presumption of prejudice [citation], a defendant can establish a speedy trial claim under the Sixth Amendment without making an affirmative demonstration that the government's want of diligence prejudiced the defendant's ability to defend against the charge. [Citation.] Under the *state* Constitution's speedy trial right, however, no presumption of prejudice arises from delay after the filing of a complaint and before arrest or formal accusation by indictment or information [citation]; rather, in this situation a defendant seeking dismissal must affirmatively demonstrate prejudice [citation]." (*Martinez*, *supra*, 22 Cal.4th at p. 755.) The Supreme Court stated: "We conclude, accordingly, that in a California prosecution the filing of a felony complaint, either with or without the issuance of an arrest warrant, is insufficient to engage the federal Constitution's speedy trial protection, and we conclude also that, absent violation of a statutory speedy trial provision, a showing of specific prejudice is required to establish a violation of our state Constitution's speedy trial right." (*Id.* at p. 756.)

Here, Figueroa's speedy trial argument is solely based on the almost nine-year delay between the filing of the felony complaint and the time he was served with the arrest warrant. As discussed *ante*, the filing of the felony complaint was not, by itself, sufficient to trigger the speedy trial protection under the United States Constitution. Hence, Figueroa's claim that his federal constitutional right to a speedy trial was triggered and violated is without merit.

The filing of the felony complaint, however, was sufficient to trigger Figueroa's speedy trial right under the California Constitution. As discussed *ante*, no

7

presumption of prejudice arises from the nine-year delay following the filing of the felony complaint until Figueroa was arrested. Instead, Figueroa was required to "affirmatively demonstrate prejudice" before the case might be dismissed for violation of the right to a speedy trial under the California Constitution. (*Martinez, supra*, 22 Cal.4th at p. 755.)

When a criminal defendant seeks a dismissal based on delay following the filing of the felony complaint, the trial court is required to weigh "'the prejudicial effect of the delay on defendant against any justification for the delay.'" (*Martinez, supra*, 22 Cal.4th at pp. 766-767.) However, if the defendant fails to meet his or her initial burden to make a prima facie showing of actual prejudice, "'the court need not inquire into the justification for the delay since there is nothing to "weigh" such justification against.'" (*Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1540-1541.)

Figueroa failed to meet his initial burden of making a prima facie showing that he suffered actual prejudice as a result of the delay. In his opening brief, he argues he showed prejudice from the delay because Naverrete "*could* have testified to . . . her knowledge that [Figueroa] was not left alone with the children" (italics added), but she was not available to testify at trial. Figueroa explained he did not stay in contact with her, and thought she might have moved to Mexico. He argues that although the police knew she lived in the apartment with Figueroa, they did not "follow-up or obtain contact information for her."

At trial, however, Figueroa admitted that there were times he was in his bedroom with A.C. and L.Z. and Naverrete was not present. In addition, Figueroa failed to establish that Naverrete would have been available to testify but for the delay or that she would have provided the proffered testimony.

Figueroa also argues Naverrete "could have testified about who had access to the residence, about the schedules and habits of the adults who lived there, about character and activities of the children who lived there, and about [Figueroa]'s interaction

8

with the children." Again, Figueroa has failed to show what Naverrete's testimony would have been and how the absence of such testimony caused actual prejudice.

Figueroa has otherwise failed to show that the delay prejudiced his defense. Figueroa argues trial testimony revealed witnesses' memories had faded. He cites A.C.'s testimony that before trial, she reviewed the videotape of the interview she had with a social worker and that it refreshed her memory, and that she had also reviewed the summary of her statement in the police report. He also cites A.C.'s statement she did not remember "some specific things she told the investigating officer when she was first interviewed . . . or in a subsequent interview." But A.C., I.R., and L.Z. all testified at trial and all remembered what Figueroa had done to them. That A.C.'s memory was refreshed by reviewing her interview and perhaps by past statements does not show actual prejudice. There is nothing to suggest Figueroa suffered any prejudice by his defense not being able to interview the victims earlier.

Figueroa argues prejudice is demonstrated by A.C.'s testimony that she did not remember who, other than her aunt (and L.Z.'s mother), might have been home when Figueroa committed the first sexual offense against her. Nothing in the record shows that A.C. would have remembered who else might have been at the apartment at that time, but for the delay. In any event, the potential loss of such evidence due to the delay does not establish actual prejudice. Nor does A.C.'s testimony that she could not remember the details surrounding the third incident in which Figueroa forced her to orally copulate him constitute actual prejudice. Figueroa fails to show how any such evidence would have helped his case.

Figueroa also argues I.R. did not remember who lived with Figueroa at the apartment or who was present at the apartment. He notes that L.Z. refreshed his memory with the video of his interview with a social worker and that before viewing the video, L.Z. admitted he had forgotten about some of the things he told the social worker had happened, and that the video did not refresh his memory about everything. For example,

9

L.Z. testified he did not remember talking to a police officer in 2000. Figueroa's argument that he was actually prejudiced by such faded memories is speculative. Figueroa does not explain how better memories would have in any way effected his ability to defend against the charged offenses.

In sum, Figueroa has failed to meet his burden of making a prima facie showing that he was actually prejudiced by the delay following the filing of the felony complaint.

As for Figueroa's state due process claim, the California Supreme Court in *Martinez, supra*, 22 Cal.4th at page 768, explained: "When . . . the defendant is not subject to restraints following arrest and has not been held to answer or formally charged in the court having jurisdiction to try the offense or offenses alleged, . . . the state Constitution's speedy trial guarantee serves primarily the interest in fair adjudication, the very same interest that the due process guarantee serves. Because in this situation the state Constitution's due process and speedy trial guarantees converge in protecting the same interest of the accused, we consider it entirely appropriate, and not a proper ground of objection, that courts use the same test to determine whether these constitutional rights have been violated." Figueroa's argument his due process right under the California Constitution was violated, therefore, fails for the same reason his violation of his right to a speedy trial claim fails.

As for Figueroa's federal due process claim, "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [the defendant]'s rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." (*United States v. Marion* (1971) 404 U.S. 307, 324; see *United States v. Lovasco* (1977) 431 U.S. 783, 789 ["the Due Process Clause has a limited role to play in protecting against oppressive delay"]; *United States v. $8,850* (1983) 461 U.S. 555, 563 [due process claims based on delay "can prevail only upon a showing that the

10

Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges"]; *United States v. Gouveia* (1984) 467 U.S. 180, 192 ["the Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense"]; *People v. Nelson* (2008) 43 Cal.4th 1242, 1251-1254 [surveying above cited United States Supreme Court precedent].)

Figueroa's federal due process claim thus fails because he has neither shown substantial prejudice, as discussed *ante*, nor asserted the delay constituted "an intentional device to gain tactical advantage" over him. (*United States v. Marion*, *supra*, 404 U.S. at p. 324.) The trial court did not err by denying the motion to dismiss.

## II.

### THE TRIAL COURT DID NOT ERR BY IMPOSING A 15-YEAR-TO-LIFE SENTENCE FOR EACH COUNT UNDER FORMER SECTION 667.61.

Pursuant to former section 667.61, subdivision (b), the trial court imposed a 15-year-to-life term for each of Figueroa's four convictions for committing a forcible lewd act on A.C., in violation of section 288, subdivision (b)(1) (counts 1-4), and for each of his two convictions for committing a lewd act on I.R. and L.Z., in violation of section 288, subdivision (a) (counts 5 & 6). Former section 667.61, subdivision (b) provided in relevant part: "[A] person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years except as provided in subdivision (j)." Former section 667.61, subdivision (c)'s list of specified predicate sexual offenses includes a violation of either subdivision (a) or (b) of section 288. (Former § 667.61, subd. (c)(4), (7).) Former

11

section 667.61, subdivision (e)(5) includes the circumstance that "[t]he defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." The jury in this case found, as to each count, that Figueroa had committed an offense specified in former section 667.61, subdivision (c) against more than one victim.

Figueroa contends, "where the only 'one strike' circumstance found true is a multiple victims allegation, [former] section 667.61 [which was] in effect at the time of the crimes charged in this case should be interpreted as permitting only one indeterminate term per victim." (Capitalization omitted.) Figueroa therefore argues he was erroneously sentenced to an indeterminate term of 15 years to life for each of the six counts, four of which involved the same victim, A.C., and further argues, "[i]nstead, [he] should have been sentenced to no more than one term of 15 years to life for each of the three alleged victims." As acknowledged in Figueroa's reply brief, his argument constitutes "a challenge to existing case law," which has consistently held that former section 667.61, subdivision (g) mandates a life sentence per victim per separate occasion for the commission of a qualifying offense under a circumstance specified in subdivision (e).

Former section 667.61, subdivision (g) provided in relevant part: "The term specified in subdivision . . . (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim *during a single occasion*. If there are multiple victims during a single occasion, the term specified in subdivision . . . (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Italics added.)

In *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1518 (*Valdez*), pursuant to former section 667.61, subdivision (b), the trial court sentenced the defendant to a consecutive term of 15 years to life for each of four counts of violating section 288, subdivision (a), two of which involved the same victim. The court also imposed three

12

concurrent 15-year-to-life sentences for three other counts of violating section 288, subdivision (a). (*Valdez*, *supra*, at p. 1518.) The defendant argued the trial court erred in imposing sentence because "it was impermissible to impose multiple one strike sentences for convictions as to [a single victim] where the only aggravating circumstance was the multiple-victim factor under the applicable version of section 667.61." (*Ibid.*) The defendant further argued, "the one strike law permitted the imposition of only one indeterminate term as to each victim." (*Ibid.*)

The appellate court rejected the defendant's argument. (*Valdez*, *supra*, 193 Cal.App.4th at pp. 1521-1522.) The court explained that all of the defendant's convictions were for specified predicate sexual offenses under the "One Strike" law and were accompanied with the true findings of one of the factual circumstances that trigger the application of the statutory 15-year-to-life punishment provision under former section 667.61, subdivision (e). (*Valdez*, *supra*, at p. 1521.) The *Valdez* court concluded, "[t]he plain meaning [of former section 667.61, subdivision (g)] is entirely clear," quoting *People v. Murphy* (1998) 65 Cal.App.4th 35, 40, in which the appellate court held: "'The only limitation on the number of life sentences which can be imposed is contained in section 667.61, subdivision (g), which provides that the defendant shall be sentenced to one life term per victim per occasion no matter how many offenses listed in subdivision (c) the defendant committed against a particular victim on a particular occasion.'" (*Valdez*, *supra*, at p. 1523; see *People v. Wutzke* (2002) 28 Cal.4th 923, 931 ["The One Strike scheme therefore contemplates a separate life term for each victim attacked on each separate occasion"].)

The *Valdez* court rejected the defendant's argument "that the multiple-victim circumstance can be imposed only once for each crime victim, regardless of whether the crimes were committed on separate occasions," noting that such an interpretation "contradicts the statute's legislative intent as determined by the usual and ordinary meaning of the words of the enactment." (*Valdez*, *supra*, 193 Cal.App.4th at

pp. 1521-1522.) The court also noted that the defendant had "identifie[d] no decisional authority in which his interpretation was endorsed or applied." (*Id.* at p. 1523.)

We agree with the appellate court's reasoning in *Valdez*, and conclude the trial court did not err by imposing a 15-year-to-life sentence for each of the offenses committed against A.C., which occurred on separate occasions, as well as for each offense committed against I.R. and L.Z.

III.

THE TRIAL COURT'S NO-VISITATION ORDER WAS IN ERROR.

At the sentencing hearing, the trial court ordered "[n]o visitation pursuant to Penal Code section 1202.05." The court's minute order stated: "Court orders all visitation between the defendant and the child victim be prohibited pursuant to Penal Code [section] 1202.05." Figueroa contends the trial court's order regarding visitation was in error because the court "lacked jurisdiction to prohibit visitation with the victims who were adults at the time of sentencing."

Section 1202.05, subdivision (a) provides, in part, that "[w]henever a person is sentenced to the state prison . . . for violating Section . . . 288 . . . , and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between the defendant and the child victim." In *People v. Scott* (2012) 203 Cal.App.4th 1303, 1307, the appellate court held that a trial court is not permitted to make an order prohibiting all communication between a defendant, as described in section 1202.05, and his or her victim if the victim is over the age of 18 at the time of sentencing. The court explained: "The danger addressed by section 1202.05 is that children's caregivers, operating in a state of ignorance or denial, sometimes subject their charges to injurious encounters with their imprisoned abusers. This danger disappears when the victim is no longer subject to the control of his or her parents or guardians." (*People v. Scott*, *supra*, at p. 1307.)

14

At the time of trial, A.C. and I.R. were both 18 years old and L.Z. was 20 years old.  In the respondent's brief, the Attorney General, citing *People v. Scott*, *supra*, 203 Cal.App.4th 1303, agrees the trial court "erred in precluding visitation under section 1202.05."

We agree the trial court erred in issuing the no-visitation order under section 1202.05, subdivision (a) and direct a modification of the judgment as set forth in the Disposition, *post*.

## DISPOSITION

The judgment is modified to strike the no-visitation order under section 1202.05, subdivision (a).  In all other respects, the judgment is affirmed.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.

15